LEWIS AND ROCA LLP
Robert M. Charles, Jr.  (NV #006593)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169-5996
Telephone:  702.949.8320
Facsimile:   702.949.8321
E-mail:     rcharles@LRLaw.com

MORRISON & FOERSTER LLP
JAMES E. HOUGH (*pro hac vice* admission pending)[1]
1290 Avenue of the Americas
New York, New York  10104-0050
Tel.:  (212) 468-8000
Fax:  (212) 468-7900
jhough@mofo.com

Attorneys for Plaintiff
JPMORGAN CHASE BANK, N.A.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JPMorgan Chase Bank, N.A.,<br><br>                    Plaintiff,<br><br>        v.<br><br>Meritage Homes Corporation and Meritage Homes of Nevada, Inc.,<br><br>                    Defendants. | **COMPLAINT**<br><br>No.. 11-1364 |

JPMorgan Chase Bank, N.A. ("JPMorgan" or "Plaintiff"), as Administrative Agent, by its undersigned counsel, Lewis and Roca LLP and Morrison & Foerster LLP, for its complaint against defendants Meritage Homes Corporation ("Defendant Parent") and Meritage Homes of Nevada, Inc. ("Defendant Member" and, each a "Defendant" and together the "Defendants"), alleges, on knowledge with respect to its own acts, and on information and belief with respect to all other matters as follows:

---

[1] Will comply with LR IA 10-2 within 21 days.

**JURISDICTION AND VENUE**

1. Plaintiff is a nationally chartered bank with its main office in Columbus, Ohio. Pursuant to 28 U.S.C. § 1348, Plaintiff is a citizen of the State of Ohio.

2. Defendant Parent is a corporation incorporated under the laws of Maryland with its principal place of business in Arizona. Defendant Member is a corporation incorporated under the laws of Arizona with its principal place of business in Nevada.

3. This Court has subject matter jurisdiction based on the diversity of citizenship among the parties.

4. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

6. Alternatively, this action is related to the bankruptcy case of South Edge, LLC, described below, so that this Court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

7. Defendants are subject to the personal jurisdiction of this Court.

**PARTIES AND RELEVANT NON-PARTIES**

8. Plaintiff brings this action on its own behalf and as Administrative Agent under the Credit Agreement and other Loan Documents defined below.

9. Defendant Parent is a Maryland corporation with a principal place of business at 17851 N. 85th Street, #300, Scottsdale, Arizona, and is a citizen of the states of Maryland and Arizona.

10. Defendant Member is an Arizona corporation with its principal place of business in Nevada, and is a citizen of the states of Arizona and Nevada. Defendant Member is one of eight members of South Edge, LLC ("South Edge" or "Borrower").

11. Non-party South Edge is a Nevada limited liability company with its principal place of business at 3455 Cliff Shadows Parkway, Suite 220, Las Vegas, Nevada.

288165.1

**SUMMARY OF THE ACTION**

12. This is an action seeking enforcement of a Repayment Guaranty executed by the Defendants in favor of JPMorgan.

13. On or about November 1, 2004, JPMorgan and other lenders (collectively, the "Lenders") entered into a credit agreement (the "Original Credit Agreement") with South Edge, which was replaced by an Amended and Restated Credit Agreement, dated March 9, 2007 (the "Credit Agreement").

14. South Edge was formed for the purpose of developing a master-planned community called "Inspirada," a project with total projected costs of over $1 billion to be built in Henderson, Nevada (the "Project"). South Edge's members (each a "Member") are subsidiaries of some of the largest developers and homebuilders in the United States. Defendant Meritage Homes of Nevada, Inc. is a Member.[2] All of the Members are subsidiaries (in most cases wholly owned) of parent guarantors.[3] Defendant Meritage Homes Corporation is Defendant Member's parent guarantor.

15. Pursuant to the Original Credit Agreement, the Lenders committed to lend up to approximately $535 million to South Edge to help finance the Project. As a condition precedent to the execution of the Original Credit Agreement, each Member and its Parent were required to execute a repayment guaranty in favor of JPMorgan for the benefit of the Lenders. A Copy of the repayment guaranty entered into by the Defendants, dated November 1, 2004 (the "Repayment Guaranty"), is attached hereto as Exhibit A and is incorporated by reference.

16. As alleged below, a Bankruptcy Event has occurred, there by triggering the Defendants' liability under the Repayment Guaranty.

---

[2] The eight Members of South Edge are Beazer Homes Holdings Corp.; Coleman-Toll Limited Partnership; Focus South Group, LLC; KB Home Nevada, Inc.; Meritage Homes of Nevada, Inc.; Alameda Investments, LLC; Pardee Homes of Nevada; Kimball Hill Homes Nevada, Inc.

[3] The Parents are, respectively, Beazer Homes USA, Inc.; Toll Brothers, Inc.; John A. Ritter; KB Home; Meritage Homes Corporation; Woodside Group, Inc.; Kimball Hill Inc.; and Weyerhaeuser Real Estate Company.

288165.1

17. Defendants have refused to honor their obligations under the Repayment Guaranty.

18. Pursuant to the Credit Agreement and other Loan Documents, JPMorgan has the right and authority to bring this case on behalf of itself and the other Lenders.

## BACKGROUND

### I. The Formation of South Edge

19. In or about late 2003, the Members began preliminary talks for the creation of "Inspirada" – a large-scale "new urbanism" development project in Henderson, Nevada. Inspirada was to include 11,500 residences spread over nearly 2,000 acres of land.

20. To begin the Project, the Members formed South Edge in May 2004 to purchase 1,940 acres of land in Henderson (the "Land") from the Federal Bureau of Land Management at a cost of $557 million.

21. Under South Edge's limited liability company agreement (as well as other agreements between each Member and South Edge), each Member has the right and the obligation to acquire specified parcels of the Land in order to develop its own unique housing and commercial products. Each Member's interest in South Edge is approximately equal to the percentage of the Land allotted to it, and obligated to be purchased by it, in Inspirada.

22. Each Member agreed to purchase its respective parcels of land from South Edge, with such purchases timed to coincide with South Edge's loan payment obligations to the Lenders. The payments from the Members to South Edge for these purchases were intended to provide the funds necessary for South Edge, as Borrower, to repay its obligation to the Lenders.

### II. The Credit Agreement

23. Pursuant to the Original Credit Agreement, JPMorgan, along with the other Lenders, agreed to help finance the Land acquisition and the infrastructure development for Inspirada by providing a substantial loan to South Edge. Pursuant to the Original Credit Agreement, the Lenders committed to lend up to approximately $535 million to South Edge for such purposes.

24. On March 9, 2007, South Edge, JPMorgan, and the other Lenders entered into the Credit Agreement which amended and restated the Original Credit Agreement. Under the Credit

Agreement, the amount borrowed by South Edge increased. In conjunction with the execution of the Credit Agreement, all of the Members of South Edge and their Parents, including Defendant Member and Defendant Parent, entered into a "Consent and Agreement," which, among other things, reaffirmed the Repayment Guaranty. A copy of the Consent and Agreement is attached hereto as Exhibit B and is incorporated herein by reference.

25. Each Member's obligation to purchase land from South Edge is divided into Phases or Pods and each purchase of a Phase is sometimes referred to as a "Takedown". These Takedowns are divided into phases. The schedules for these Takedowns are reflected in Acquisition Agreements between each Member, including Defendant Member, and South Edge. The Takedown schedules from the Acquisition Agreements are also reflected in the Schedule 2 of the Credit Agreement.

26. The Credit Agreement requires that each time a Member acquires (or "takes down") a phase, South Edge must pay the Lenders a portion of the purchase price paid by the Member for that Takedown (the "Release Price").

### III. The Repayment Guaranty

27. In order to induce JPMorgan and the other Lenders to enter into the Original Credit Agreement, the Members and Parents executed repayment guaranties, which were reaffirmed at the signing of the Credit Agreement with the execution of the Consent and Agreement.

28. Defendant Member and Defendant Parent entered into the Repayment Guaranty, dated November 1, 2004, in favor of JPMorgan as Administrative Agent. In the Repayment Guarantee, Defendant Member and Defendant Parent are jointly and severally liable for the Liabilities and are together referred to as the "Guarantor."

29. The Repayment Guaranty describes the scope of the guaranty made by Defendants as follows:

> SECTION 2. **Guaranty**. (a) The Guarantor does hereby absolutely, irrevocably and unconditionally, jointly and severally, as primary obligor and not as surety, guarantee and agree to pay upon demand by the Administrative Agent following the occurrence of a Bankruptcy Event, for the benefit of the Lenders and the other

> Holders of Secured Obligations, an amount equal to the Guaranteed Share of all principal of the Loans, all interest on the Loans and all commitment fees and Letter of Credit fees now owing or which may in the future be owing by the Borrower under the Credit Agreement and all payments which may in the future be owing, under any Approved Swap Agreement with one or more Lenders or Affiliates of Lenders, when such sums are due and payable, whether on demand, at stated maturity, by acceleration or otherwise (such Guaranteed Share of the foregoing sums being the "Liabilities"). The obligations of the Guarantor hereunder shall not be reduced by amounts paid by any other guarantor. This Guaranty is a guaranty of payment and not of collection only. . . .

30.  The Repayment Guaranty obligates the Guarantors (Defendant Member and Defendant Parent) to pay their "Guaranteed Share" of (1) the outstanding principal on the Loan, (2) the outstanding interest on the Loan, (3) all commitment fees and Letter of Credit fees, and (4) all payments owed under any Approved Swap Agreement after the occurrence of a "Bankruptcy Event."

31.  Section 1(a) of the Repayment Guaranty defines a Bankruptcy Event as follows:

> 'Bankruptcy Event' means that (i) an involuntary proceeding shall be commenced or an involuntary petition shall be filed against [South Edge] seeking liquidation, reorganization or other relief under any bankruptcy law now or hereafter in effect and such proceeding or petition shall continue undismissed for 60 days or an order or decree approving or ordering any of the foregoing shall be entered; or (ii) Borrower shall voluntarily commence any proceeding or file any petition seeking liquidation, reorganization or other relief under any bankruptcy law now or hereafter in effect.

32.  Section 1(b) of the Repayment Guaranty defines Guaranteed Share as follows:

> 'Guaranteed Share' means, at any time a fraction, stated as a percentage, having as its numerator the aggregate amount of the Release Prices of all Phases to be acquired, but not yet acquired, by the Member Guarantor under its Acquisition Agreement and as its denominator the aggregate amount of the Release Prices of all Phases of the Project to be acquired, but not yet acquired, by all Members who are not Released Guarantors (including the Member Guarantor) under their respective Acquisition Agreements.

33.  The Guaranteed Share is calculated by dividing the Release Prices of the Phases remaining to be acquired by the Defendants' by the Release Prices of all Phases remaining to be acquired by the Members, and converting it to a percentage.

288165.1

34. Defendant Member's final Takedown (i.e., the acquisition of its last Phase) scheduled for April 15, 2008 did not occur. The Release Price for that Takedown totals $12,343,500.50.

35. The aggregate total of the uncompleted Takedowns of all Members is $351,760,500.00.

36. Based on the formula in Section 1(b) of the Repayment Guaranty, the Defendants' Guaranteed Share is calculated with the following formula:

$$\frac{\$12{,}343{,}500.00}{\$351{,}760{,}500.00} = .0351$$

Therefore, the Defendants' Guaranteed Share is 3.51%.

37. The Defendants are obligated to pay 3.51% of all principal of the Loans, all interest on the Loans, and all commitment fees and Letter of Credit fees now owing or which may in the future be owing to JPMorgan and the other lenders under the Credit Agreement upon the occurrence of a Bankruptcy Event.

38. Section 3 of the Repayment Guaranty states that it is "absolute, irrevocable and unconditional."

39. Section 11 of the Repayment Guaranty states that the remedies provided in the Repayment Guaranty are "cumulative and not exclusive of any remedies provided by law" and that "Guarantor waives any right or claim of right to cause a marshalling of the Borrower's assets or to proceed against the Guarantor, the Borrower, or any other guarantor of any of the Borrower's obligations in any particular order, including, but not limited to, any right arising out of NRS 40.430."

40. Section 13 of the Repayment Guaranty states that the "Guarantor waives presentment, notice of dishonor, protest, notice or acceptance of this Guaranty or incurrence of any Liability and any other formality with respect to any of the Liabilities or this Guaranty."

**IV.  South Edge's Default and Bankruptcy**

41. In early 2008, South Edge defaulted on its obligations under the Credit Agreement by failing to pay interest as and when due. Since that time, a variety of defaults, including failure

288165.1

1   to pay principal and interest, have continued to mount and the full amount of outstanding
2   principal and interest is now due and owing.  As of August 22, 2011, the outstanding principal,
3   interest, commitment fees, and Letter of Credit fees totaled $381,693,367.55.  Interest on the
4   principal alone continues to accrue at the rate of $48,705.90 per day.

5         42.   On December 9, 2010, certain Lenders, including JPMorgan (together, the
6   "Petitioning Creditors"), filed an involuntary bankruptcy petition against South Edge in the
7   United States Bankruptcy Court for the District of Nevada, thereby commencing an involuntary
8   case.  The case, captioned *In re South Edge, LLC*, Case No. 10-32968, is pending before the
9   Honorable Bruce A. Markell.

10         43.   In addition to filing the bankruptcy petition, the Petitioning Lenders also moved
11   for the appointment of a bankruptcy trustee for South Edge.

12         44.   South Edge, by direction of the Defendants and other Members and Parents,
13   opposed the bankruptcy petition and the motion for the appointment of a trustee.

14         45.   After a full and fair trial, on February 3, 2011, Judge Markell entered an order for
15   relief making South Edge a debtor under Chapter 11 of the Bankruptcy Code, and directed the
16   U.S. Trustee to nominate a Chapter 11 trustee to oversee South Edge's day-to-day affairs.

17         46.   On February 23, 2011, Judge Markell entered an order appointing Cynthia Nelson
18   as South Edge's Chapter 11 trustee.

19         47.   The South Edge bankruptcy case continued for more than 60 days after its
20   commencement, and is still pending as of the date of this complaint.

21         48.   South Edge, through some of its Members, and the same Members in their own
22   name, appealed Judge Markell's order to this Court on February 8, 2011.  By order dated April
23   28, 2011, Judge Philip M. Pro of this Court dismissed the appeals.  Thereafter, South Edge and
24   the Members took their appeal to the Court of Appeals for the Ninth Circuit.  At the time of the
25   filing of this complaint, that appeal is pending.

288165.1

### V.     **Demand and Failure to Perform**

49.     Because of the involuntary bankruptcy of South Edge, a Bankruptcy Event has been triggered by two different events.  First, the bankruptcy proceeding continued for more than 60 days, and second, an order for relief was entered by the bankruptcy court.

50.     By the plain terms of the Repayment Guaranty, Defendants are liable for the Liabilities thereunder because of the occurrence of the Bankruptcy Event.

51.     By letter dated June 6, 2011, JPMorgan demanded payment by Defendants of $13,242,841.10, their then-outstanding Liabilities under the Repayment Guaranty.  That amount has increased to $13,473,775.87 as of August 22, 2011.  As of August 22, 2011, the total of the (1) outstanding principal on the Loan, (2) outstanding interest on the Loan, (3) commitment fees and Letter of Credit fees, and (4) payments owed under any Approved Swap Agreement Liabilities was $381,693,367.55.  Based on Defendants' Guaranteed Share of 3.53%, the amount owed by Defendants under the Repayment Guaranty on August 22, 2011 was at least $13,242,841.10, exclusive of accruing attorneys' fees and costs.  The Defendants' Liabilities continue to accrue daily.  JPMorgan's demand letter is attached hereto as Exhibit C.

52.     By letter dated June 20, 2011, counsel for Defendants rejected JPMorgan's demand for payment under the Repayment Guaranty.  The letter rejecting JPMorgan's demand is attached hereto as Exhibit D.

53.     Despite due demand, Defendants have failed and refused to pay and have therefore breached their obligations under the Repayment Guaranty.

54.     On August 19, 2011, Defendants filed suit in the Common Pleas Court of Franklin County, Ohio, against JPMorgan, which included claims for (1) breach of contract under the Assignment of Acquisition Agreement entered into by Defendants in JPMorgan's favor, (2) breach of the covenant of good faith and fair dealing under the Repayment Guaranty and "other documents relating to the loan to South Edge," (3) declaratory judgment as to the Forbearance Agreement, and (4) declaratory judgment as to Defendants' rights and JPMorgan's Obligations under the Repayment Guaranty.  That case is captioned *Meritage Homes of Nevada Inc. et al. v. JPMorgan Chase*, 11-cvh-08 10353 (the "Ohio Litigation").

**ATTORNEYS' FEES**

55.     Section 15 of the Repayment Guaranty states that Plaintiff is entitled to recover attorneys' fees and all other fees, costs and expenses "incurred by the Administrative Agent in connection with the performance or enforcement of" the Repayment Guaranty.  Those fees, costs, and expenses include, but are not limited the costs of prosecuting the present suit and defending the Ohio Litigation.

**COUNT I – BREACH OF CONTRACT – DAMAGES**

**FAILURE TO PAY UNDER REPAYMENT GUARANTY**

**MERITAGE HOMES CORPORATION AND MERITAGE HOMES OF NEVADA, INC.**

56.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

57.     Pursuant to the Repayment Guaranty, which, by its terms, is absolute, irrevocable, and unconditional, Defendants jointly and severally guaranteed to pay their Liabilities.

58.     The Repayment Guaranty has been triggered because a Bankruptcy Event – South Edge's pending bankruptcy and the entry of the order for a bankruptcy – has occurred.

59.     JPMorgan has made due demand under the Repayment Guaranty and the Defendants have failed and refused to pay their Liabilities.

60.     By reason of the foregoing, Defendants have injured Plaintiff and are liable to Plaintiff for damages of more than $13,329,681.05.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the following relief be awarded:

(a)     Entry of judgment against Defendants for Defendants' Guaranteed Share of the Liabilities owed to Plaintiff, which specific amounts will be proven in this action, but not less than $13,329,681.05, together with applicable pre- and post-judgment interest;

(b)     Entry of an order awarding Plaintiff its attorneys' fees and other costs of collection associated with enforcing Plaintiff's rights and claims under the Repayment Guaranty and under applicable law in this suit and in the Ohio Litigation;

(c)     Plaintiff's taxable costs; and

288165.1

1       (d)    Such other and further relief as this Court deems just and proper.

Dated:  August 23, 2011.        Respectfully submitted,

By <u>Robert M. Charles, Jr.  (NV #006593)</u>
    LEWIS AND ROCA LLP
    Robert M. Charles, Jr.  (NV #006593)
    3993 Howard Hughes Parkway, Suite 600
    Las Vegas, Nevada 89169-5996
    Telephone: 702.949.8320
    Facsimile:  702.949.8321
    E-mail:     rcharles@LRLaw.com

James E. Hough (*pro hac vice* admission pending)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY  10104-0050
Tel.:  212.468.8000
Fax:  212.468.7900
jhough@mofo.com

*Attorneys for JPMorgan Chase Bank, N.A.*

288165.1