UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ISG INSOLVENCY GROUP, INC.,

        Plaintiff/Counterdefendant,

v.

MERITAGE HOMES CORPORATION
and MERITAGE HOMES OF NEVADA,
INC.,

        Defendants/Counterclaimants.

2:11-CV-01364-PMP-CWH

ORDER

Presently before the Court is Plaintiff's Motion for Summary Judgment (Doc. #100), filed on January 7, 2013.  Defendants Meritage Homes Corporation and Meritage Homes of Nevada, Inc. filed an Opposition (Doc. #104) on February 4, 2013.  Plaintiff filed a Reply (Doc. #105) on February 22, 2013.

Also before the Court is Defendants' Motion for Leave to File Supplement to Record on Summary Judgment (Doc. #109), filed on May 15, 2013.  Plaintiff filed an Opposition (Doc. #110) on May 23, 2013.  Defendants filed a Reply (Doc. #111) on June 3, 2013.

The parties are familiar with the facts in this case and the Court will not repeat them here except where necessary.  Plaintiff ISG Insolvency Group, Inc. moves for summary judgment on the amount owed by Defendants Meritage Homes Corporation and Meritage Homes of Nevada, Inc. ("Meritage") on a Repayment Guaranty.  Plaintiff contends that following discovery, no genuine issue of fact remains that Meritage owes $15,053,857.17 as of December 6, 2012, which was the date the parties deposed JPMorgan

Chase Bank, N.A.'s ("JPMorgan") corporate designee, William Austin ("Austin"). Additionally, Plaintiff contends the only matter left for the Court to resolve is the proper interest rate to apply, either the New York statutory rate or the Credit Agreement rate. Meritage opposes, arguing that it is not liable on the Repayment Guaranty for a variety of reasons. Alternatively, Meritage asserts that even if it is liable, genuine issue of fact remain regarding the amount of damages.

## I. MERITAGE'S LIABILITY

Meritage argues it is not liable under the Repayment Guaranty because Austin admitted that after the bankruptcy Plan was confirmed, JPMorgan and the other Prepetition Lenders had no claims or damages against Meritage under the Repayment Guaranty. Meritage thus contends Plaintiff, as JPMorgan's sub-agent, has no claims or damages against Meritage either. Meritage also contends JPMorgan and the Prepetition Lenders agreed that any remaining deficiency was satisfied by a $500,000 payment under the Plan. Meritage further argues that Plaintiff cannot perform its obligation under the Repayment Guaranty because the property was transferred free and clear of all liens under the Plan, but Meritage was to succeed to JPMorgan's lien rights in the property upon satisfaction of the Repayment Guaranty. Meritage therefore contends there is a material failure of consideration which relieves Meritage of its obligation to perform.

Plaintiff replies that the Court already has rejected Meritage's arguments regarding liability, and Meritage is liable on the Repayment Guaranty without any rights to setoffs and without regard to JPMorgan's release of the lien. Plaintiff contends Meritage has not established reconsideration of this Court's prior Orders on these issues is warranted. Plaintiff further argues that the fact that JPMorgan released its lien on the property does not absolve Meritage of its liability or create an offset based on the value of the property because Meritage is liable under the Repayment Guaranty irrespective of any release of collateral. Plaintiff thus contends that Meritage's liability on the Repayment Guaranty does

not depend on Meritage's receipt of JPMorgan's lien rights.  Plaintiff further argues that Meritage breached the Repayment Guaranty in June 2011, and thus any subsequent failure to perform by JPMorgan is excused.

The Court previously has rejected Meritage's argument that it is not liable on the Repayment Guaranty because JPMorgan or its sub-agent have no remaining claims against Meritage.  (Order (Doc. #86) at 10-11.)  The Court likewise rejects Meritage's contention that JPMorgan and the Prepetition Lenders agreed that any remaining deficiency was satisfied by a $500,000 payment under the Plan.  Section 3.5(C) of the Plan provides that each holder of an unsecured prepetition loan deficiency claim against South Edge's estate "shall receive in full and complete settlement, release, and discharge of such claim vis-a-vis the Estate and its Assets, a ratable share of $500,000, to be funded from the Settling Builders' Total Plan Contribution."  (Defs.' Opp'n to Pl.'s Mot. Summ. J. (Doc. #104) ["Defs.' Opp'n"], Ex. B, the Plan at § 3.5(C).)  However, the release was only "vis-a-vis the Estate and its Assets."  As is made clear by other provisions in the Plan, neither section 3.5(C) nor any other Plan provision releases Meritage's liability for any remaining deficiency.

Meritage next argues it is released from liability because Plaintiff cannot perform its obligation under the Repayment Guaranty due to the property being transferred free and clear of all liens under the Plan.  However, the Repayment Guaranty provides that Meritage agreed "absolute[l]y, irrevocabl[y] and unconditional[ly]" to pay on demand Meritage's Guaranteed Share, "irrespective of . . . any exchange, release or non-perfection of any Collateral [or] any present or future law, regulation or order of any jurisdiction . . . purporting to reduce, amend, restructure or otherwise affect any term of any Facility Document or Liabilities."  (Defs.' Opp'n, Ex. A at § 3.)  Consequently, Meritage agreed it would be liable on the Repayment Guaranty even if the liens on the property were released or the terms of the Facility Documents were modified by judicial order, such as through a

confirmed bankruptcy plan.  No genuine issue of material fact remains that Meritage is liable on the Repayment Guaranty.

**II. DAMAGES**

Meritage disputes the amount of damages, to the extent it owes any damages. First, Meritage argues Plaintiff failed to provide evidence regarding the amount of money JPMorgan and the Prepetition Lenders received for Meritage's portion of the property through Plan confirmation.  Meritage contends this amount should be offset against the Repayment Guaranty amount because it was, in effect, a foreclosure sale of the property. Second, Meritage argues its obligation is only its guaranteed share of 3.51% of $47 million, the amount the Court previously identified as the remaining deficiency following Plan confirmation.

Third, Meritage contends the evidence is unclear as to the proper amount owed by JPMorgan's own calculations.  For example, Meritage contends the Plan estimated Meritage's repayment obligation at between $12.4 and $12.8 million, which is less than the $13,256,110 which Plaintiff now asserts was Meritage's repayment obligation as of June 6, 2011.  Meritage also notes that JPMorgan's demand letter of June 6, 2011 listed a different amount.  Additionally, Meritage contends Austin was unsure whether the calculations included Major Infrastructure payments made by South Edge member Focus and Meritage's own Major Infrastructure deposit was not credited to Meritage.  Fourth, Meritage contends that none of the evidence Plaintiff offered is admissible, as it is based on hearsay exhibits and Austin's testimony, but Austin did not work for JPMorgan during part of the relevant time period and he lacked personal knowledge of the facts set forth in the exhibits.  Finally, Meritage contends that even if it owes damages, Plaintiff has used an incorrect interest rate, as the Repayment Guaranty provides that the Credit Agreement rate should be used, not the New York statutory rate.

///

1    Plaintiff argues Meritage does not dispute any of the material facts regarding the
2   amounts owed or the calculations made.  Plaintiff asserts the Court already properly rejected
3   Meritage's arguments that it owes only its share of the $47 million deficiency because the
4   Repayment Guaranty provides that Meritage is not entitled to any setoff and payments by
5   other guarantors do not reduce Meritage's obligations.  Plaintiff also contends Focus's
6   Major Infrastructure deposit is irrelevant because it was transferred as part of the Plan,
7   which occurred after Meritage's obligations under the Repayment Guaranty came due, and,
8   regardless, Meritage is not entitled to offsets based on another guarantor's payment.
9   Plaintiff contends Austin testified Meritage's Major Infrastructure deposit was credited to
10   Meritage.  Plaintiff also argues that the alleged discrepancies in the stated amount of
11   Meritage's liability are irrelevant because the undisputed facts show Meritage's actual
12   liability as of June 2011.  Plaintiff contends its motion is based on competent evidence
13   because it is admissible at trial and the product of a person most knowledgeable deposition.
14   Finally, Plaintiff argues the New York statutory rate should apply because neither the
15   Repayment Guaranty nor the Credit Agreement expressly set forth an interest rate for
16   damages arising from a breach of the Repayment Guaranty.

17       **A. Offsets**

18       This Court already has rejected the basis for Meritage's arguments that it is
19   entitled to an offset for the amount JPMorgan received through Plan confirmation and that
20   its obligation is only 3.51% of $47 million.  (Order (Doc. #86) at 28-30).)  The Court will
21   not revisit those issues here.  Meritage's argument regarding Focus's Major Infrastructure
22   deposit is rejected for the same reasons.  Focus's Major Infrastructure deposit was resolved
23   through Plan confirmation months after JPMorgan made demand on Meritage's Repayment
24   Guaranty, and Meritage is not entitled to a setoff under the Repayment Guaranty's terms.
25   (Defs.' Opp'n, Ex. B, the Plan at § 1.1 (definition of "MI Funds," "MI Litigation," and
26   "Resolved MI Amount"), § 3.4; Decl. of William A. Austin in Support of Appellee's Mot.

for Dismissal of Appeal (Doc. #18 in 2:11-CV-01963-PMP-PAL) at 12.)  Further, Austin

testified at his deposition that Meritage's Major Infrastructure deposit was credited to

Meritage.  (Defs.' Opp'n, Ex. C at 28-29.)  Therefore, Meritage has not presented evidence

raising a genuine issue of material fact that Meritage is entitled to any offsets.

### B. Austin's Testimony

Meritage's argument that Plaintiff's motion is not supported by admissible

evidence because Austin lacks personal knowledge fails for two reasons.  First, at the

summary judgment stage, the Court does "not focus on the admissibility of the evidence's

form.  [The Court] instead focus[es] on the admissibility of its contents."  Fraser v.

Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  Evidence is admissible for summary

judgment purposes it if could be presented "in an admissible form at trial."  Fonseca v.

Sysco Food Servs. of Ariz., Inc. 374 F.3d 840, 846 (9th Cir. 2004) (quotation omitted).

Because Plaintiff could present the evidence in an admissible form at trial, including

through the testimony of JPMorgan employees who kept the records and made the relevant

entries in JPMorgan's accounting of Meritage's obligations, or possibly through a records

custodian as business records under Federal Rule of Evidence 803(6), Austin's testimony is

admissible on summary judgment.

Second, Austin testified as JPMorgan's person most knowledgeable in response

to deposition notices from both Plaintiff and Meritage pursuant to Federal Rule of Civil

Procedure 30(b)(6).  (Pl.'s Mot. Summ. J., Exs. D, E.)  Under Rule 30(b)(6), a party may

name as the deponent an entity, and in response, the entity must designate one or more

employees to testify on its behalf about "information known or reasonably available to the

organization."  Testimony from a Rule 30(b)(6) deposition thus represents the entity's

knowledge, not the individual deponent's knowledge.  Accordingly, a Rule 30(b)(6)

deponent must prepare to respond on the designated topics "beyond matters personally

known to that designee or to matters in which that designee was personally involved."

<u>Brazos River Auth. v. GE Ionics, Inc.</u>, 469 F.3d 416, 433 (5th Cir. 2006) (quotation omitted).  The entity "must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."  <u>Id.</u>  Because a Rule 30(b)(6) deponent's testimony reflects the entity's personal knowledge, rather than the individual deponent's personal knowledge, "if a certain fact is within the collective knowledge or subjective belief of [the entity], [the individual deponent] should be prepared on the issue by [the entity], and allowed to testify as to it, even if it is not within his direct personal knowledge, provided the testimony is otherwise permissible lay testimony."  <u>Id.</u> at 434; see also <u>PPM Fin., Inc. v. Norandal USA, Inc.</u>, 392 F.3d 889, 894-95 (7th Cir. 2004) (stating the Rule 30(b)(6) deponent was "free to testify to matters outside his personal knowledge as long as they were within the corporate rubric").  Accordingly, Austin's testimony as JPMorgan's Rule 30(b)(6) person most knowledgeable is admissible as within JPMorgan's personal knowledge.

As to the discrepancies between JPMorgan's demand letter, the Plan, and Plaintiff's motion for summary judgment regarding the amount of Meritage's liability, no genuine issue of material fact remains.  By its own terms, the Plan's stated amount was an estimate, which was arrived at with the Settling Builders through negotiation to set the amount the Settling Builders would have to contribute to settle their own claims with JPMorgan and the Prepetition Lenders.  As to any discrepancy with the June 2011 demand letter, Meritage does not dispute a single entry, charge, addition, or calculation, other than the interest rate discussed below, nor present any related evidence, to create a genuine issue of material fact that Plaintiff's present calculation is incorrect.  Therefore, no genuine issue of material fact remains that Meritage's liability as of June 6, 2011 was $13,256,110.66.

### C. Interest Rate

Meritage contends that even if it owes damages, Plaintiff has used an incorrect interest rate, as the Repayment Guaranty provides that the Credit Agreement rate should be

1  used, not the New York statutory rate.  Plaintiff responds that neither the Repayment

2  Guaranty nor the Credit Agreement set forth the rate for a breach of the Repayment

3  Guaranty, and consequently the New York statutory rate should apply.

4          The Repayment Guaranty is governed by New York law.  (Defs.' Opp'n, Ex. A at

5  § 18.)  Under New York law, a prevailing party in a breach of contract action is entitled to

6  prejudgment interest.  N.Y. C.P.L.R. § 5001(a).  Prejudgment interest runs "from the

7  earliest ascertainable date the cause of action existed."  Id. § 5001(b).  New York provides a

8  statutory interest rate of nine percent per annum.  Id. § 5004.  However, where parties

9  contractually agree to a different interest rate, "that rate is used to calculate interest on

10  principal prior to loan maturity or a default in performance."  NML Capital v. Republic of

11  Argentina, 17 N.Y.3d 250, 258 (2011).

12         Section 2(a) of the Repayment Guaranty provides that the "Liabilities shall

13  include . . . interest accruing after the commencement of a proceeding under bankruptcy . . .

14  at the rate or rates provided in the Facility Documents."  (Defs.' Opp'n, Ex. A at § 2(a).)

15  "Liabilities" are defined as "an amount equal to the Guaranteed Share of all principal of the

16  Loans, all interest on the Loans and all commitment fees and Letter of Credit fees now

17  owing or which may in the future be owing by the Borrower under the Credit Agreement

18  and all payments which may in the future be owing, under any Approved Swap Agreement

19  with one or more Lenders or Affiliates of Lenders, when such sums are due and payable,

20  whether on demand, at stated maturity, by acceleration or otherwise."  (Id.)  The Repayment

21  Guaranty does not define "Liabilities" to include interest on a breach of the Repayment

22  Guaranty itself.  The Repayment Guaranty does not otherwise set forth an interest rate for a

23  breach of the Repayment Guaranty.  Because the Repayment Guaranty does not set forth an

24  interest rate for a default in performance of the Repayment Guaranty, no genuine issue of

25  material fact remains that the New York statutory interest rate applies, running from the

26  date of demand, June 6, 2011.  Consequently, no genuine issue of fact remains that

Meritage owes Plaintiff $15,053,857.17 as of December 6, 2012, the date of Austin's deposition.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. #100) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File Supplement to Record on Summary Judgment (Doc. #109) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff ISG Insolvency Group, Inc. shall submit a proposed form of judgment in conformity with this Order on or before July 8, 2013.


DATED:  June 17, 2013

_____
PHILIP M. PRO
United States District Judge